25-4030. Banner Bank v. Smith. Mr. Cole, if you could introduce yourself and you may proceed. Thank you, Your Honor. Stephen Cole of Raquidia Nebuchadnezzar. I am appearing on behalf of Banner Bank, which was formerly known as America West Bank, which had previously been known as Far West Bank. This case, which has been long running, Your Honors, arises from a $2.3 million loan that was made by the bank to a couple of companies that were in Utah. They were involved in real estate. The principal of those companies was a man named James Smith, and James Smith guaranteed the loan. There was collateral that was pledged for the loan. The collateral, the personal property collateral, was located in Utah. There was a mortgage given on property in South Carolina. There was a deed of trust given on property in Oregon. The Oregon deed of trust encumbered 11 parcels of land and a one-half interest in a condominium. And the loan went into default. And because of complications dealing with how you can foreclose in these different states, when you have either a mortgage or a deed of trust, that the proper procedure was to file the diversity action before the United States District Court here in Utah, and the South Carolina judge so ruled. And so, as the case proceeded, Mr. Smith and the bank were able to reach a stipulation as to the foreclosure of the South Carolina property. That was approved by the district court, and so there was a credit given on the loan as a result of that. So, the South Carolina property fell out. As the case went on, the bank pursued, had filed its complaint. And in filing its complaint, it named Lurie Smith as a party for purposes of declaratory relief only. And the reason for that was the Oregon property, the deed of trust, rather, encumbered an Oregon condominium. And that condominium reflected, according to the title report, that it was owned one-half by James Smith and one-half by Lurie Smith. And in addition to that, the Smiths had been married for some time but were separated. A strange divorce case was filed in Florida that went on, I think, for nearly 10 years. And so, the bank's concerns were that, well, we had given a release to various parties, and Lurie Smith was a third-party beneficiary of that release. They wanted to make certain that they didn't execute or that the district court didn't execute on any property that was owned by Lurie Smith. And so, the proper procedure under Utah law, which is incorporated under Rule 69, is that they named Lurie Smith solely for the purpose of obtaining declaratory relief that she didn't have an interest in the collateral owned by James Smith. And as you all know, oftentimes, spouses will come in and assert a marital interest in property. The bank didn't want that to occur, so the proper procedure was to name her. She was named solely for purposes of declaratory relief as to whether she had an interest in the property. There was no claim of liability sought against her in any way. There was never any sort of receivership on the condo that was imposed. The bank didn't interfere with the rents that the two of them were sharing from the condominium and so forth. So, let me stop you for just a second. So, you would agree, though, that the text of the release does not specifically exclude actions for declaratory relief from the release? Yes. Okay. So, I mean, at least as a textual matter, your declaratory judgment action was covered by the language of the release. Yes. I mean, it talks about claims. And I think I understand from your briefing, I mean, you're not even really contesting that you breached the release. You're just, in your mind, it wouldn't give rise to attorney's fees or damages. That's correct. I mean, if you look at the specific text of the release, it talks about claims and other such relief. It doesn't mention that a release as to declaratory relief is granted. But I understand the term claim as it's been defined by federal law is a right to payment generally. But you're right. For purposes of the briefing, we've asserted that the release applied in that, I guess, there could have been a breach of the release. But the release, as you pointed out, which is governed by Utah law, did not have an attorney's fee clause. So, what occurs? So, what occurs is Loree Smith comes in and files a motion to dismiss. And the hearing comes on before Judge Wattops. And after the motion is filed, we said, if she will release any claim against the bank's collateral, which was just the one half interest of James Smith and the other property of James Smith, that we would dismiss her from the lawsuit. Because that was the sole purpose of joining her. After that occurred, then what transpired was she came back, amended her motion, and said, no, I'm not going to release my claim again that I may have against the condominium. And I'm asserting that the condominium is solely mine. And so, because of that, she wasn't released. The judge then came back and said, well, in light of that, then I'm denying your motion to dismiss. You're properly a party before the court. You're necessary and indispensable for all the reasons that were stated by the court or by the bank. And so, that ruling was made early on in the case. And it has stood through the entire case. Let me ask you this. Where did your offer to dismiss her if she would basically disclaim an interest in the collateral, where did that fit in timing-wise with the 2014 judgment giving her Mr. Smith's right to the property, to the condo? It was at the very beginning. After the action had been filed, the motion to dismiss was filed, so it preceded that. It was at the commencement of the litigation. So, in any event, the legal standard for bad faith here, which we've indicated and you're aware of, is that in order to establish inherent bad faith, there has to be clear evidence that the claims or action are taken entirely without merit, and that they have to be taken for a harassment delay, improper purposes, and that you have to have a subjective intent to act in bad faith. The bank did none of that. The bank was simply seeking to enforce its trustee against the collateral that had been pledged. And so, all of the bank's claims were meritorious. And there was no wrongful purpose. The only purpose was to protect. The only purpose was to make certain that the court nor the bank executed on property. Didn't the district court make fact findings that are contrary to that position that we'll have to review for clear error? I don't believe so, because my understanding of the crediting your opinion by the 10th Circuit is that it's if the finding of fact is based upon an erroneous legal conclusion that the court reviews it de novo. So, what's the erroneous legal conclusion? He made a number. He ruled that the bank acted in bad faith by intentionally breaching the release. And under Utah law, the Utah Supreme Court has stated that an intentional breach of a contract or release is not bad faith, and that a party may always breach a contract without suffering any penalty whatsoever. So, repeatedly throughout his opinions, he's taken the view, oh, I understand, Mr. Call, that she's properly joined under 2201 for declaratory relief, and she's properly named as a necessary and indispensable party. But that doesn't mean that your client didn't intentionally breach the contract. And because there was an intentional breach of the contract, that was bad faith in and of itself. Was there some deception involved also, altering some legal documents? No. With regards to the deed of trust, is that what the court? Yeah, the deed of trust, the other basis that the court relied upon was that the deed of trust had not been disclosed until the second day of trial. We have laid out a number of facts that are contrary to that. The deed of trust was attached as an exhibit to the complaint that was filed with the court. The deed of trust was a matter of public record. It was produced during discovery. Prior to trial, we had a pretrial conference with Judge Waddups, and he had ordered the parties to provide to the other side the exhibits that were going to be produced at trial. Lorraine Smith stipulated to the authenticity of the deed of trust. The only thing that she said was, through her counsel, is I'm not going to stipulate to the little faint markings, but I stipulate to the authenticity of the deed of trust. In addition to that, we had provided a certified copy of the deed of trust, which was admissible under the rules of the federal rules of evidence. But nevertheless, he said, I want the original deed of trust here and I want it tomorrow. So we had it sent down. After the judge looked at the original deed of trust, he said, I can't find anything significant from those markings. So very quickly then, because I'm running out of time, is that there was no subjective intent to do any wrongful purpose. It was only to protect her interest and to allow the bank to go forward. If you've ever proceeded in trying to collect against a married couple or divorced couple, you know how they say, well, this belongs to you, this belongs to him, and so forth. There was all that justification for it. With regards to his ruling on alternative relief under Utah law, Utah law does not allow attorneys to use this compensatory damages. And we've cited the court to that, and the district judge cited to three cases. The McCleave case did not address the American rule, but it awarded fees under a contempt statute. The Beck opinion does not mention the American rule, let alone abort fees as compensatory damages. And the Ranch Homes opinion is directly contrary to the court's ruling that these were only awardable and provided for by contract. So none of the three cases cited in his opinion regarding the alternative awarded fees applies. And then I'll just conclude by indicating that there was no objection made to the allocation of fees. What about the Fleetwood Services case, 2018 Utah Supreme Court? How would you distinguish that? I just have to state to the court, I don't have that in front of me, so I can't make a meaningful response. I'd have to look at that. But just concluding then, the failure to allocate fees, we cite the court to the Goodyear Tire and Rubber Company, which where the Supreme Court said, when you award fees on grounds of bad faith, the fees must be allocated. We raised before the district court, and we raised in the prior appeal that there had been no allocation. The bank prevailed on every counterclaim that was brought by Laree Smith. After the declaratory relief action was filed, she sued and brought numerous counterclaims, and we obtained a serving judgment on all of them, including her counterclaim to rescind the deed of trust. Well, that's not entire. One of her counterclaims was the breach. Except for the breach of contract. You didn't prevail on all of them. Yeah, I meant to exclude. I was coming to that. All of her counterclaims except for the breach of contract claim, which went to trial, and the breach of contract claim, the bank prevailed on because she failed to prove any damages at trial. And so as a result of that, they prevailed. So, and let me just, I think this is really important in just concluding. So the senior vice president from Seattle flies down. We have a hearing before the judge. And the judge says, look, if you could just have a settlement conference, we did, we couldn't settle, we came back before the judge. He says, look, if the bank would release its deed of trust against the condominium, which there's a dispute over, then things will go well for the bank. So immediately the senior vice president instructs counsel to immediately release the deed of trust against the Oregon property. So we immediately released the deed of trust before the Oregon property, months before trial. And the only reason the case went to trial was because she was pursuing her counterclaim for breach of contract under the release. It didn't go to trial against Lori Smith on behalf of the bank. It went because of her counterclaim. And we prevailed on that counterclaim because Judge Wattups ruled there weren't any damages. He only awarded judgment for a bad faith attorney's fees under the Utah statute, which didn't apply. So the bank was chagrined to have a release collateral on a $2.3 million loan and to have done so in good faith, only to have the judge come, the district court come back and say, oh, well, it's bad faith because you didn't produce the deed of trust at trial. Why would the deed of trust wasn't needed at trial? The deed of trust had been released in February and the trial was in June. And then finally, we've raised a number of objections to the attorney's fee affidavit, Mr. Drummond. We raised them before the district court and we itemized the basis for our objections. And I point to the court in the court's opinion in Ocelot 847P2nd 1458, that when a party fails to respond to an argument regarding the attorney's fees, the position is waived. So our position is that Loree Smith has waived any response by failing to respond to any of our arguments regarding the allocation of fee or the affidavit. Thank you. Thank you, counsel. Let's hear from Mr. Drummond. May it please the court. Robert Drummond on behalf of Loree Smith. Merit can never be created by alteration and concealment. Merit is either meritorious on the facts, but it can never be created by alteration and concealment. On remand, the district court considered what the Tenth Circuit, what this court recognized, and considered Banner's conduct in the context of the bad faith exception to the American rule. The district court acknowledged the exceptionality of the application of that exception. The district court was very clear that this is an exceptional and extraordinary thing to do, as it should be. The American rule is foundational to our legal system, but it is no more foundational than the notion of candor with the court. So stop there for just a second. I mean, the award of fees to you by the district court under its inherent powers, I mean, this concealment idea, I'm not contesting that it didn't happen. I mean, obviously, the documents that you're provided during discovery didn't have the notes on them. But what if they did? How does that change your case at all? Your case is based on release. It has nothing to do with a faulty deed of trust or anything like that. So what if they did conceal it from you? I mean, so what? Because the alteration is what created the auspice that they had a legal interest in the 11 parcels in Unit 7. Banner Bank fails to disclose to this court what we put in our statement of facts that in September of 2010, the bank knowing it did not have a valid deed. And this is part of our supplemental appendix. The bank directed Dan Egan to do a revised deed of trust. There's an email that's part of the record included in the supplement that specifically instructs Mr. Egan, do a revised deed, removing Unit 7, removing Loree Smith's name, and only the 11 parcels of land because Loree Smith had no interest in the 11 parcels. And so they, in September of 2020, before the sale and before the release was even done, the bank knew they didn't have a valid deed. They instruct a revised deed. They never got it executed such that the original was sent back. And when the loan went into default, that is when the bank caused the initial deed of trust that specifically said Loree Smith, James Smith as husband and wife collectively. So when the bank files its complaint and specifically says, Exhibit E, which is the trustee, it says, this is a true copy of what Mr. Smith executed and delivered to the bank but never disclosed that the striking of Loree Smith's name, the striking of husband and wife, the striking of the signature block and the notary block was done subsequent to Mr. Smith signing that document. So the bank specifically, not only, altering the deed beforehand, that's not part of the bad faith. I mean, it's probably fraud, but that's not what gives rise to the attorney fees under the bad faith exception. It's when the bank filed the complaint and said, this deed is what Mr. Smith signed and sent to us was pure fabrication. Therefore- Okay, so assume, I'll take your word for it, but what's that do for your client? I mean, your client still has a release. Nobody's disputing that your client has a release and your client's brought suit based on a release, not based on the other document. No, sir. Judge, they could have, just as the district court noted, they could roll the dice and bring a deck action against Loree Smith based on a legitimate deed. And they could have said, look, we have reasons that we're going to run the risk of a breach of contract, breach of the release, but we have a legitimate deed and we want this deck action. And then Loree Smith would have responded accordingly, but that's not what happened. The bank from the get-go puts it in the posture of asserting to the district court that Banner Bank has a legal interest in unit seven and a legal interest in the 11 parcels. They did not because Mr. Smith and Loree Smith never signed that deed of trust. It was not an individual deed of trust. Therefore, if the bank had said, well, we have this deed of trust, we crossed out Loree's name, we're asserting it's valid, and we're disclosing that we altered the deed, but we think it's okay. They didn't do that. Then Loree Smith could have responded appropriately. She would have filed a motion to smish, probably dealt with the release issue, but we would have, Judge, gone out of the gate knowing that the bank was now asserting a legal interest in a claim because it altered a deed. This is what the district court found from the get-go was the improper purpose. You file a claim, conceal that you altered that claim to ostensibly give you merit to bring a case knowing that that concealment is covering up a pure fabrication. Okay, let me ask you this. So the deed that marked through her name and marked through her notary block and that was ultimately recorded, I mean, that's publicly available. So it's a matter of record, right? Judge, here's the kicker, and I know where you're going. I don't mean, and tell me if I'm cutting you off. I don't mean to. No, go ahead. I know where you're going. Banner Bank is not accurate when we said, when he represented to this court and we put this in our brief, we never said we don't stipulate to the authenticity because of pencil-like markings. No, that's not where I'm going. But where I'm going is that like this, this was information that was available to you, that the strikethrough and everything, that's not something they sprung on you at trial. That was in the public record. No, sir, we only learned about it because they're representing, they're ostensibly saying- Are you disagreeing that it was in the public record? Well, their whole case was, their whole theory beginning discovery is that Mr. Smith crossed out Larrice Smith's name, that he's the one that crossed out the notary block. And so while you had in the Oregon, in the recorder's office, you had that document, that didn't tell you who struck it out. It was only in, and this is the part that I think the district court found incredibly reprehensible. It was only in Banner Bank's reply to our opposition to summary judgment that the bank said, oh, we made some alterations, but they're clerical, minor, and insignificant. Without those alterations, your honor, they don't have a claim to the 11 parcels of land or unit seven. Those can hardly be said to be minor and clerical, yet they're trying to foreclose on unit seven because it's an undivided interest. And that they would have been in the position of having Larrice to either have to split profits with Banner Bank or to sell the property. That's what the court found. And Judge, incredibly significant as this. I went into the clerk's office. I flew out to Oregon to look at the deed. I looked at the deed in the clerk's office. Here's the problem, is that when you look at the deed, they attach to the complaint. When you look at the deed in the clerk's office, obviously you see the strikethrough of the name and you see the strikethrough of the signature block. This is why I insisted that the original be produced at trial, was because only in the original, not even a certified photocopy does it appear. Only in the original do you see whiteout, blue numbers, with indication of blue numbers under the whiteout, erasure, words that Judge Waddups could read part of, even though I drew no conclusion. Had we had that from the get-go, had the bank been honest and disclosed, it's not concealed this, we would have known from the get-go. They had crossed this out. They knew it wasn't recordable. Judge, this is why their whole case falls apart, is because they're the ones that went to their own counsel and said, this deed is not recordable, do us a new deed, omit Lurie Smith, have just the 11 parcels and nobody else. Counsel, can I jump in here? You've said several times the court found, the court found, but I have to say that I'm looking at the order that we're reviewing and there's not much there. I mean, the court doesn't say, here is the evidence of harassment that I am relying on. Here's the evidence of this was done without color. The order doesn't do that. Is it? I mean, you're filling in so much of the facts, but I guess I'm trying to focus on what the district court actually found. Yes, your honor. So the district court, in our statement of facts to this court, other than a brief section at the end that we call additional facts, we track the original memorandum decision from the district court. So all of our statement of facts, one through whatever they are before the additional facts are the findings of facts and conclusions. And we specifically say at the beginning, we set forth what judge Wattup said. I've made these findings of facts, conclusions of law, and they are interrelated in terms of if one can be read to be the other, I so intended. On remand, the court specifically said, I am reaffirming each of those findings and specifically says, and what's fascinating is the first finding of the district court is this. Banner Bank's concealment of these alterations was intended to take unconscionable advantage of Lurie and therefore constituted bad faith. The court then goes on and there's three other findings specifically that the court makes regarding the bad faith. And the court sets out that concealing those sorts of things. What's fascinating to me is that when you go to Banner Bank's brief, they only cite the last three, because there's no bad faith under the 10th Circuit and Supreme Court rulings unless the action was done for an improper purpose or an oppressive reason. And the very first finding of the district court is these concealments and alterations were intended to take unconscionable advantage. How about without color? Well, Judge, that was my initial argument. Perhaps I should have used the word color instead of merit. I used merit to say, and I said merit cannot be created through alteration and concealment. Perhaps I should have said color cannot be created through alteration and concealment. So those findings suggest without color or satisfy without color as well. The concealment covers both. Is that what you're saying? Yes, Your Honor. I think the district court was very clear. There is merit in bringing a deck action to say, what is a person's interest? And if the bank had said, yeah, we altered the deed. We did this. We're bringing this action. But that's not what happened. The bank altered the deed, brought this action and didn't disclose that they had altered the deed. Therefore, from the get-go, because they altered a deed to create a legal interest, there was no colorable claim that otherwise, and I want to be a little careful about what I say this. Maybe this is why the bank did not disclose that they altered a deed and we're trying to foreclose on it because that would invoke perhaps far more serious consequences than simply attorney fees under a bad faith exception. Can you explain, Mr. Call said there's no Utah law that would support the alternative finding of attorney's fees. And what cases are you relying on for? The Fleetwood case is the exact case that this court even recognized it in its opinion when it directed the remand. There is, Utah law is very clear as the court already cited the case that where attorney fees are the direct result from the action, from the breach, then they're allowed. And Judge- Does the court cite to Fleetwood? I think initially in the, I'm not sure in this opinion, Judge, I believe the court specifically in nine seconds, we'll see how quickly I can do it. But Judge, under Utah law, damages recoverable for breach of contract include general, those flowing directly from the natural breach and reasonably contemplated in the court cites several Utah provisions. And Judge, I'm out of my time. I'm past- Okay, Counselor, I appreciate the arguments. The counsel are excused and the case is submitted.